Roy WALKER, Appellee,

v.

SOUTHERN RAILWAY COMPANY,
Appellant.

Roy WALKER, Appellant,

v.

SOUTHERN RAILWAY COMPANY,
Appellee.

Nos. 9967, 9968.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 3, 1965.

Decided Dec. 22, 1965.

Jerome Ackerman, Washington, D. C. (W. Graham Claytor, Jr., James I. Hardy, Washington, D. C., and Harold K. Bennett, Asheville, N. C., and Covington & Burling, Washington, D. C., on brief), for Southern Railway Co.

J. Nat Hamrick, Rutherfordton, N. C., for Roy Walker.

Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and MICHIE, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Roy Walker, a fireman on the Southern Railway Company, may recover damages of $4500 from the railroad, the District Court has held, for terminating his seniority, as a result of which he was not allowed to work. The assessment was based on the finding that the termination was a discharge in violation of the collective bargaining agreement between the railroad and his union. Both Walker and Southern appeal.

The facts are simple. Reporting for work on March 3, 1957 Walker found he had been displaced in his job by a fireman with superior seniority. Whereupon he told the crew clerk he was sick and was going home. According to his testimony he kept the officials apprised of his continued illness and inability to work. On April 29, 1957 the railroad wrote him that "you stand for work on your seniority and unless you protect your seniority within 30 days from the date of this letter, you will have forfeited your seniority". Authority for the 30-day stipulation was the collective bargaining agreement. As of May 28, 1957 at midnight the Southern cancelled his

seniority, holding ineffective—as a day beyond the 30 days—his appearance on May 29 to preserve his seniority. However, the Court upheld Walker's contention that a correct counting of the 30 days gave him until May 29 to prevent the forfeiture.

■ The railroad now contends that the District Court was without jurisdiction because the complainant had not first exhausted the grievance procedures provided in the collective bargaining agreement and the privilege of a review by the National Railroad Adjustment Board under the Railway Labor Act, 45 U.S.C. §§ 151, 153(i). The employee assigns as error the mitigation by the Court of his damages, saying there was no evidence disclosing other earning opportunities open to him after leaving the Southern.

We must sustain the railroad's appeal. At the time of the District Court's decision the law clearly permitted an immediate suit by a discharged employee against his railroad for a breach of the collective agreement when, as here, the employee asked money damages only and not reinstatement. Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Moore v. Illinois Central R. R., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). But closely following the entry of judgment in this action, the Supreme Court decided Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Although that case did not deal with a railroad employee, nevertheless we read the opinion as requiring in our case an exhaustion of remedies both under the collective bargaining agreement and before the Adjustment Board prior to suit. Cf. Neal v. System Board of Adjustment, 348 F.2d 722, 727 (8 Cir. 1965).

Specifically, Maddox denied judicial recourse to the discharged employee until he had "attempt[ed] use of the _contract_ grievance procedure agreed upon by employer and union as the mode of redress." (Accent added.) True, the opinion observed that the Court did not mean to overrule Moore v. Illinois Central R. R., supra, 312 U.S. 630, 61 S.Ct. 754, "within the field of the Railway Labor Act", 379 U.S. at 657, 85 S.Ct. at 619, fn. 14; but the ratio decidendi embraces the instant controversy.

The next question, presently, is whether the influence of _Maddox_ also compels the railroad employee to take advantage of a review by the Railroad Adjustment Board. There the question was, of course, not expressly before the Court, but it is before us if Walker is to be saved from further court litigation. On the basis of the _Maddox_ decision we hold that, if the employee does not prevail on the contract remedies, then before instituting a lawsuit he must petition review by the National Railroad Adjustment Board. 45 U.S.C. § 153(i). See Beebe v. Union R. R., 205 Pa.Super. 146, 208 A.2d 16 (1965).

The Board was obviously created to answer just the type of complaint now before us. The admonishment of the Railway Labor Act, supra, 45 U.S.C. § 152 that "[I]t shall be the duty of all carriers * * * and employees to exert every reasonable effort * * * to settle all disputes, * * * arising out of the application of * * * agreements" warrants the demand that such differences be first submitted to the very agency erected to resolve them. Cf. Brotherhood of R. R. Trainmen v. Chicago R. & I. R. R., 353 U.S. 30, 34–39, 77 S.Ct. 635, 1 L.Ed.2d 622 (1956); Gunther v. San Diego & A. E. Ry., 86 S.Ct. 368 (Dec. 8, 1965).

■ The imposition of this condition was, seemingly, foreshadowed by Pennsylvania R. R. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959), where the Court held that the Railroad Adjustment Board had exclusive primary jurisdiction over a retired railroad employee's complaint arising under a collective bargaining agreement. This is the trend of relevant Federal decisional law: that disputes rooted in a collective bargaining agreement should be brought to the

Board for resolution before resort to the courts. National uniformity in decision and expertness in understanding the problems are among the advantages urging the preference. Union Pacific R. R. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); see also Gainey v. Brotherhood of Railway & Steamship Clerks, etc., 275 F.2d 342, 343 (3 Cir. 1960).

The need and place of the Board are pointedly exampled now. The rightfulness of Walker's discharge depends upon the method of calculating the time stipulated by the collective agreement within which he had to "return to active service" to avoid forfeiture of seniority. According to his computation his return was punctual, under the railroad's reckoning he was too late. Thus not only is there a need for uniformity in interpretation here, but the determination of the controversy calls for railroad-labor knowledgeability, something possessed in the highest degree by the Adjustment Board. See Gunther v. San Diego & A. E. Ry., supra, 86 S.Ct. 368 (Dec. 8, 1965).

Letters in the record reveal that the railroad asked the attitude of the union upon the railroad's action in respect to Walker. In response the union expressed approval and suggested that "the matter rest as it is". From this, counsel for Walker argues that remand of his claim to the contract grievance processes would be unfair, since it has thus already been rejected by both the railroad and the union, who are responsible for and supervise the prosecution of these remedies. Notwithstanding, we cannot anticipate that the union will not fulfill any obligation it may have under the duty of fair representation owed to Walker under the collective bargaining agreement. At all events, Walker should give the union an "opportunity to act on his behalf." Republic Steel Corp. v. Maddox, supra, 379 U.S. at 653, 85 S.Ct. at 616.

"If the union refuses to press or only perfunctorily presses the individual's claim," he has his remedies as the Court intimates in *Maddox*, 379 U.S. at 652, 85 S.Ct. at 616. Among others, he may himself follow through on the intramural steps and the Adjustment Board review just discussed. 45 U.S.C. § 153(i); but cf. Wade v. Southern Pacific Co., 243 F.Supp. 307 (S.D.Texas 1965). If the time limitations of the internal remedies are interposed to preclude a hearing, the fairness of their application could also be tested before the Board.

Consequently, the judgment on appeal should be vacated and the action returned to the District Court for dismissal. Each party will bear his and its costs here.

Vacated and remanded for dismissal.